Filed 3/12/15  P. v. Robles CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B252895 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BA390804) |
| ARMANDO ROBLES, JR., et al., | ORDER MODIFYING OPINION |
| Defendants and Appellants. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on February 26, 2015, is modified as follows:

On page 1, the third paragraph is modified to read as follows:

"Lisa M. Bassis for Defendant and Appellant, Michael Anthony Ibarra."

[There is no change in the judgment.]

Filed 2/26/15 (unmodified version)
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B252895 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BA390804) |
| ARMANDO ROBLES, JR., et al., | |
| Defendants and Appellants. | |

APPEALS from judgments of the Superior Court of Los Angeles County, Ronald H. Rose, Judge. Affirmed and remanded with directions.

Melanie K. Dorian, under appointment by the Court of Appeal, for Defendant and Appellant, Armando Robles, Jr.

Lisa M. Bassis, under appointment by the Court of Appeal, for Defendant and Appellant, Michael Anthony Ibarra.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.

A jury convicted defendants Armando Robles, Jr., and Michael Anthony Ibarra of two counts each of attempted murder (Pen. Code, §§ 664, 187, subd. (a))[1] and one count each of shooting at an occupied vehicle (§ 246). The jury found that the attempted murders were committed willfully, deliberately, and with premeditation (§ 664, subd. (a)) and were serious felonies (§ 1192.7, subd. (c)). It also found that defendants committed the attempted murders for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b). It found the allegations that a principal personally used a firearm in the attempted murders (§ 12022.53, subds. (b), (e)(1)) true as to Robles but not true as to Ibarra. It found not true as to both defendants the allegations that a principal personally and intentionally discharged a firearm in the attempted murders (*id.*, subds. (c), (e)(1)). It also found that the defendants committed the shooting at an occupied vehicle for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b). Defendants appeal the judgments.

Defendants contend: (1) the evidence was insufficient to support their convictions; (2) the evidence does not support the findings on the gang allegations; (3) they were entitled to instructions on self-defense and the lesser included offense of attempted voluntary manslaughter; (4) the trial court erred by excluding evidence of Robles's spontaneous statement to the police; (5) the court erred by excluding impeachment evidence regarding a victim; (6) the cumulative effect of these errors was prejudicial and requires reversal; (7) this court should independently review sealed records to determine whether additional police personnel records should have been disclosed; (8) the court erred by imposing 15-year rather than seven-year minimum parole eligibility terms on both defendants; (9) Ibarra's aggregate sentence constitutes cruel and unusual punishment under the federal and state Constitutions; and (10) clerical errors in a minute order on the verdict against Ibarra should be corrected.

We affirm the judgments, but remand with directions to correct clerical errors in a minute order on the verdict.

---

[1]    All statutory references are to the Penal Code unless stated otherwise.

# FACTUAL AND PROCEDURAL BACKGROUND

1. *Prosecution's Case*

    a. *The Shooting*

Los Angeles Police Department Officers Benjamin Aguilera and Cesar Wences were working for the vice unit on September 27, 2011. They wore plain clothes and rode in a late model, rented black Camaro. Wences was driving, and Aguilera sat in the front passenger seat. They were driving northbound on Soto Street north of Cesar Chavez Avenue, a known gang area, when they heard someone yelling from the west sidewalk or a front porch by the sidewalk. They saw a man, whom they later identified as Robles, looking at them and yelling while gesturing with his hands. They could not make out the words spoken or the gestures, but Wences perceived the gestures to be gang signs.

Wences saw approximately four males standing on the porch. He saw Robles step onto the sidewalk while reaching toward his rear waistband. Robles then walked northbound on the sidewalk in the same direction as the moving car. Ibarra followed behind him.

Wences turned left from Soto Street to Sheridan Street and drove slowly westbound on Sheridan Street. Robles and Ibarra followed briskly on foot and crossed over to the north side of Sheridan Street. Aguilera saw that Robles was carrying a handgun in his right hand, informed his partner, and broadcast a call for help on his police radio. Noticing that Aguilera's call was being interrupted by other transmissions, Wences pressed the help button on his own police radio to override the other calls, reported a man with a gun, and requested backup.

Wences then saw Robles enter the front passenger side of a silver car behind the Camaro facing west on Sheridan Street. Aguilera saw both defendants enter the silver car. The silver car accelerated, as did Wences. Wences drove approximately 40 to 50 miles per hour. The silver car was approximately 500 feet behind the Camaro. Wences sought to maintain a safe distance between the two vehicles while continuing to monitor the suspects' location so as to assist the officers responding to his call.

3

Following a jog in the road, he turned right onto St. Louis Street and then left back onto Sheridan Street. The officers continued westbound on Sheridan Street to its terminus at State Street, and turned left onto State Street. As he turned onto State Street, Wences saw the silver car turning left from St. Louis Street onto Sheridan Street.

Wences pulled over to the shoulder of State Street near a freeway overpass to see whether the silver car would continue to follow them. After a short time, the silver car turned left onto State Street. Wences sped away with the silver car in pursuit. Wences drove south on State Street to Cesar Chavez Avenue where he stopped at a red light and then ran the red light as the silver car continued approaching. As Wences continued driving south on State Street, the silver car turned right onto Cesar Chavez Avenue, traveling west.

Wences then made a u-turn, so the Camaro was facing north on State Street south of Cesar Chavez Avenue. As he completed the u-turn, the two officers saw the silver car turn right onto State Street from Cesar Chavez Avenue. The two cars were now facing each other and were only about 60 feet apart with no outlet between them. Wences almost came to a stop momentarily, and then unholstered his handgun and drove forward. Aguilera also unholstered his handgun and held it by his leg.

Wences saw Robles lean in front of the driver and point a gun in his right hand out the driver's side window and toward the officers while the driver leaned back in the driver's seat. The two cars were only 10 to 15 feet apart at this time. Aguilera also saw the front passenger holding a gun in his right hand extending his right arm out the driver's side window. The officers saw a muzzle flash and heard a shot. Aguilera ducked down by the dashboard, while Wences, holding a gun in his right hand and extending the gun out the driver's side window, fired three shots toward the silver car. Wences could not recall who fired first, but Aguilera testified that he heard the first shot from the silver car. The two cars drove past each other traveling in opposite directions.

The silver car continued traveling southbound on State Street. Wences made a u-turn and saw the silver car turn left onto Michigan Avenue. Wences also turned

4

from State Street left onto Michigan Avenue and saw the silver car turn right at the next street. The first marked patrol car arrived soon afterwards.

The silver car stopped shortly after turning right. Robles and Ibarra ran from the car. Ibarra was holding a semiautomatic handgun in his right hand pointed toward the ground. Police officers in a marked patrol car drove toward the two suspects, who ran down the driveway of an apartment complex. Officer Gabriel Blanco drew his gun and shouted at the defendants, but they kept running. The officers set up a perimeter and waited for other officers to arrive. Officer Peter Bueno saw the defendants standing next to a garage. He ordered them out towards the front and, with the assistance of other officers, arrested them.

Meanwhile, the silver car fled the scene. Officers later pursued the car and arrested the driver, Alex Miranda.

The police discovered a handgun under or on a plastic tarp in the parking lot behind the apartment building. They found another handgun in a stack of plastic chairs. The two handguns were a .357 caliber Magnum revolver and a .45 caliber Taurus semiautomatic pistol. The revolver was fully loaded with ammunition, the hammer was cocked, and there was a bullet in the chamber ready to fire. The Taurus held 10 rounds in the magazine and one in the chamber. The magazine had a capacity of 12 rounds. Both guns had been fired at some time, although the criminalists could not determine when they were fired.

A .45 caliber fired bullet was found in the front left wheel well of the Camaro. It could have been fired from the Taurus and was not fired from the revolver. The bullet impacts indicated that it was fired from in front of and toward the Camaro and moved from the driver's side toward the passenger's side. Another set of bullet impacts found on the Camaro's driver's side mirror indicated that another bullet was fired from the Camaro away from the vehicle and struck the mirror. The results of gunshot residue tests for both defendants were negative.

A witness testified at trial that she was having a yard sale in front of her house on State Street on the evening of September 27, 2011, when she heard a gunshot. She ran

to her porch, turned, and saw a bald-headed man in a black car with his arm outstretched pointing a gun out the window. She saw other cars ahead of the black car, but she did not notice a silver car. She believed that the black car was traveling south on State Street. When asked if the black car was following another car, she responded that it was and stated, "[t]here were other cars in front." She could not tell whether the gun was pointed at another car. She testified that she heard two more shots "further down," perhaps two or three streets away.[2]

### b. *Gang Evidence*

Los Angeles Police Department Officer Brian Jones testified for the prosecution as a gang expert. He was assigned to the gang enforcement detail in the Hollenbeck Division. He stated that gang members commit violent crimes to instill fear and intimidation in the community and to enhance their reputation within the gang. He stated that gangs are territorial, and gang members typically react very aggressively when rivals enter their territory. Gang members may challenge an unfamiliar individual by gesturing a gang sign or stating their gang's name and then gauging the person's reaction. Gang members may commit violence and shootings if they perceive a violation of their territory.

Jones testified that he was familiar with Robles and that Robles was a known member of the State Street gang displaying multiple gang tattoos. He stated that Ibarra was also a known member, or at least an associate, of the gang and that Miranda was a known State Street gang member displaying gang tattoos.

### 2. *Defense Case*

The defense called Dr. Bruce Krell to testify as an expert regarding the bullet trajectories. Dr. Krell had performed a reconstruction of the shooting. He concluded

---

[2]     The same witness stated when she was interviewed by the police on September 27, 2011, that she initially heard two gunshots, ran toward the house, turned, and saw a black car with the driver extending his arm out the window and holding a gun. She stated that the black car was driving south on State Street behind another car and that she heard no more gunshots. The prosecutor played a recording of the interview at trial and provided transcripts to the jurors.

that the passenger in the silver car did not have enough room to lean across the driver as the officers described and that the muzzle blast from firing the gun would have burned the driver's face. Dr. Krell stated that the impact height and bullet trajectory were inconsistent with the officers' explanation of the shooting and that it was more likely that the driver of the silver car was the shooter.

The defense also called the officers' supervisor, Sergeant Marc Archuleta, who arrived at the scene of the shooting shortly after the incident. He interviewed Aguilera and Wences that evening. Archuleta testified that Wences told him that he was parked in the car when he fired the shots.[3] Wences also stated that he might have seen a woman in the silver car.

Robles and Ibarra did not testify at trial.

### 3. *Procedural Background*

An information charged both defendants with two counts of attempted murder (§§ 664, 187, subd. (a)) (counts 1 & 2) and a third count of shooting at an occupied vehicle (§ 246) (count 3). It alleged that the attempted murders were committed willfully, deliberately, and with premeditation within the meaning of section 664, subdivision (a) and were serious felonies (§ 1197.2, subd. (c)). It also alleged that in the commission of the attempted murders a principal personally and intentionally discharged a firearm (§ 12022.53, subds. (c), (e)(1)) and a principal personally used a firearm (§ 12022.53, subds. (b), (e)(1)). It alleged that the attempted murders were committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1) and (4). It also alleged that the shooting at an occupied vehicle was a serious felony (§ 1192.7, subd. (c)) and was committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(4).

An amended information contained the same allegations and also alleged that Robles had suffered a prior strike and had not remained free from prison custody within

---

[3]     At trial, Wences denied stating that he was parked at the time he fired the shots.

7

the past 10 years (§ 667.5, subd. (a)) and that he had suffered a prior conviction of a serious or violent felony or juvenile adjudication (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i)).

Both defendants pleaded not guilty and the case proceeded to a jury trial. The jury found both defendants guilty of all three counts and found as to both defendants that the attempted murders were committed willfully, deliberately, and with premeditation and were serious felonies. It found the criminal street gang allegations under section 186.22, subdivision (b) true as to each count against both defendants. With respect to counts 1 and 2, the jury found the allegation that a principal personally used a firearm (§ 12022.53, subds. (b), (e)(1)) true as to the Robles and untrue as to Ibarra. It also found the allegation that a principal personally and intentionally discharged a firearm (§ 12022.53, subds. (c), (e)(1)) not true as to both defendants. The trial court found true the prior strike (§ 667.5, subd. (a)) and prior conviction allegations (§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i)) against Robles.

Ibarra moved for a new trial based on the failure to instruct the jury on self-defense and imperfect self-defense, insufficiency of the evidence, and other grounds. The court denied the motion.

4.      *Sentencing*

The trial court sentenced Robles on counts 1 and 2 to two consecutive life terms, each with a minimum parole eligibility term of 15 years, pursuant to section 186.22, subdivision (b)(5). It doubled those terms to life with a minimum parole eligibility term of 30 years pursuant to the three strikes law (§§ 1170.12, subds. (a)–(e), 667, subds. (b)–(i)). It stayed the sentence on the enhancement under section 12022.53, subdivisions (b) and (e)(1) as to both counts, with the stays to become permanent upon the completion of his sentence. It also stayed the sentence on count 3 against Robles and the enhancement on that count under section 186.22, subdivision (b)(1)(C) pursuant to section 654. The court also imposed a consecutive three-year term under section 667.5, subdivision (a) based on Robles's prior strike, for an aggregate sentence of life with the possibility of parole after 63 years.

8

The trial court sentenced Ibarra on counts 1 and 2 to two consecutive life terms, each with a minimum parole eligibility term of 15 years, pursuant to section 186.22, subdivision (b)(5). It stayed the sentence on the enhancement under section 186.22, subdivision (b)(1)(C) pursuant to section 654 as to the first count, with the stay to become permanent upon the completion of his sentence. It stayed the sentence on count 3 against Ibarra and the enhancement on that count under section 186.22, subdivision (b)(1)(C) pursuant to section 654. Thus, the court imposed an aggregate sentence of life with the possibility of parole after 30 years.

## CONTENTIONS

Defendants contend: (1) the evidence does not support their attempted murder convictions; (2) the evidence does not support their convictions of discharging a firearm at an occupied vehicle; (3) the evidence does not support the findings on the gang allegations; (4) they were entitled to instructions on self-defense and the lesser included offense of attempted voluntary manslaughter; (5) the trial court erred by excluding evidence of Robles's spontaneous statement to the police; (6) the court erred by excluding impeachment evidence regarding Wences; (7) the cumulative effect of these errors was prejudicial and requires reversal; (8) this court should independently review sealed records to determine whether additional police personnel records should have been disclosed; (9) the court erred by imposing 15-year rather than seven-year minimum parole eligibility terms on both defendants; (10) Ibarra's aggregate sentence constitutes cruel and unusual punishment under the federal and state Constitutions; and (11) clerical errors in a minute order on the verdict against Ibarra should be corrected.[4]

## DISCUSSION

1. *Substantial Evidence Supports the Attempted Murder Convictions*

A person who unsuccessfully attempts to unlawfully kill another person with malice aforethought is guilty of the crime of attempted murder. (§§ 187, subd. (a), 664.)

---

[4] Robles and Ibarra join in all of each other's contentions, with exceptions of contentions (10) and (11), which Ibarra asserts alone.

Attempted murder requires a specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing. (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1192; § 21a.) Direct evidence of a defendant's intent to kill is rare. Such intent usually must be inferred from the defendant's acts and the circumstances of the crime. (*People v. Smith* (2005) 37 Cal.4th 733, 741.) The act of purposefully discharging a firearm at another person at close range, without legal excuse, supports an inference that the shooter had an intent to kill. (*Id.* at p. 742, see *id.* at p. 739.)

A person may be guilty of attempted murder, or any other crime, as a direct perpetrator or as an aider and abettor. (*People v. Lee* (2003) 31 Cal.4th 613, 622 (*Lee*).) " 'A person who aids and abets the commission of a crime is a "principal" in the crime, and thus shares the guilt of the actual perpetrator.' [Citation.]" (*People v. Smith* (2014) 60 Cal.4th 603, 611; see § 31.) A person aids or abets the commission of a crime by aiding the direct perpetrator by acts or encouraging him or her by words or gestures. (*Lee*, *supra*, at p. 623.) In addition, the aider and abettor must act with knowledge of the criminal purpose of the direct perpetrator and with the intent of committing or of encouraging or facilitating the commission of the crime. (*Smith*, *supra*, at p. 611.) "Thus, to be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as an aider and abettor must intend to kill. [Citation.]" (*Lee*, *supra*, at p. 624.)

Section 664, subdivision (a) increases the punishment for attempted murder when the attempted murder was willful, deliberate, and premeditated. The statute increases the punishment both for the direct perpetrator who committed the attempted murder willfully, deliberately, and with premeditation, and for any aider and abettor who did not personally act with willfulness, deliberation, and premeditation. (*People v. Favor* (2012) 54 Cal.4th 868, 879; *Lee*, *supra*, 31 Cal.4th at p. 627.)

10

" 'The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. [Citations.] [¶] Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]' [Citation.]" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

We conclude that substantial evidence supports defendants' attempted murder convictions as aiders and abettors. That is, defendants' actions suggest that they knew of and shared the shooter's intent and that they provided aid and encouragement. Robles shouted and gestured at the officers, drew a gun, and pursued the Camaro on foot. Ibarra followed behind him. Defendants then entered the silver car and continued to pursue the Camaro through several turns. Although they turned right onto Cesar Chavez Avenue after the Camaro ran a red light driving south on State Street, they quickly turned back onto State Street and resumed driving south on State Street toward the Camaro. An occupant of the silver car then pointed a gun and shot toward the Camaro at close range. The fact that the Camaro was only 10 to 15 feet away from the silver car at the time of the shooting supports an inference that the shooter intended to kill the officers.[5]

---

[5]    The jury found the allegation that a principal personally and intentionally discharged a firearm in the commission of the attempted murders not true as to both defendants. The jury also found the allegation that a principal personally used a firearm true as to Robles but not true as to Ibarra. These findings appear to be inconsistent with the guilty verdicts against both defendants because the attempted murders involved the discharge of a firearm. Such an inconsistency, however, does not undermine the guilty

11

Robles's acts of shouting and gesturing at the officers were belligerent, especially when the acts were committed by a known gang member in gang territory. His brandishing a gun while pursuing the Camaro on foot and then continuing to pursue the Camaro in the silver car also evidenced a malevolent intent. Ibarra's acts of pursuing the Camaro on foot and then entering the silver car with Robles, knowing that Robles was acting belligerently toward the occupants of the Camaro and openly carrying a gun, suggest that he shared Robles's malevolent intent. There is no indication that defendants were unwilling participants in either the car chase or the shooting. To the contrary, their conduct suggests that they were willing participants. Based on this evidence, the jury could reasonably conclude that defendants had knowledge of and shared the shooter's intent to pursue and kill the officers and gave aid and encouragement to the shooter.

2. *Substantial Evidence Supports the Convictions of Shooting at an Occupied Vehicle*

A person who maliciously and willfully discharges a firearm at an occupied motor vehicle is guilty of a crime. (§ 246.) Shooting at an occupied motor vehicle is a general intent crime. (*People v. Mendoza* (1998) 18 Cal.4th 1114, 1123 (*Mendoza*); *People v. Overman* (2005) 126 Cal.App.4th 1344, 1356.) The act of shooting at an occupied motor vehicle is inherently criminal, so the direct perpetrator need not have any other intent apart from the intent to commit that act. (*Mendoza, supra*, at pp. 1123, 1129.)

A person is guilty of shooting at an occupied motor vehicle as an aider and abettor only if he or she gives aid or encouragement with the specific intent that the direct perpetrator commit the crime. (*Mendoza, supra*, 18 Cal.4th at p. 1129.) The attempted murders here were perpetrated by shooting at an occupied vehicle. The same

verdicts if substantial evidence supports the guilty verdicts. (*People v. Miranda* (2011) 192 Cal.App.4th 398, 405.) "An inconsistency may show no more than jury lenity, compromise, or mistake, none of which undermines the validity of a verdict." (*People v. Lewis* (2001) 25 Cal.4th 610, 656.)

evidence discussed above showing that defendants gave aid and encouragement for the attempted murders by entering the silver car and pursuing the Camaro together also shows that defendants gave aid and encouragement for the shooting at an occupied vehicle. Accordingly, sufficient evidence supports defendants' convictions of discharging a firearm at an occupied vehicle.

        3.     *Substantial Evidence Supports the Findings on the Gang Allegations*

Section 186.22, subdivision (b)(1) establishes an additional prison term for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . . " (*Ibid.*) Subdivision (b)(4) mandates a life sentence for any person who is convicted of certain enumerated felonies if the felony was "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ."[6] (*Ibid.*) Subdivision (b)(5) mandates a life term with a minimum parole eligibility term of 15 years in those same circumstances if the felony is punishable by a life term and is not one of the felonies enumerated in subdivision (b)(4).

Defendants do not challenge the sufficiency of the evidence that they committed the crimes for the benefit of, at the direction of, or in association with a criminal street gang. They argue instead that there is no substantial evidence that they committed the crimes with the specific intent to facilitate *other* criminal conduct by gang members. They cite *Garcia v. Carey* (9th Cir. 2005) 395 F.3d 1099 for the proposition that the second prong of section 186.22, subdivision (b)(1) requires the specific intent to facilitate some other criminal conduct by gang members apart from the current offenses.

The California Supreme Court in *People v. Albillar* (2010) 51 Cal.4th 47 rejected this same argument, disagreeing with *Garcia v. Carey*, *supra*, 395 F.3d 1099. *Albillar*

---

[6]     Attempted murder is not one of the felonies enumerated in section 186.22, subdivision (b)(4).

13

held that the specific intent required under the second prong of section 186.22, subdivision (b)(1) "applies to *any* criminal conduct, without a further requirement that the conduct be 'apart from' the criminal conduct underlying the offense of conviction sought to be enhanced." (*Albillar*, *supra*, at p. 66.) *Albillar* stated further, "if substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Id.* at p. 68; see also *People v. Villalobos* (2006) 145 Cal.App.4th 310, 322 ["Commission of a crime in concert with known gang members is substantial evidence which supports the inference that the defendant acted with the specific intent to promote, further or assist gang members in the commission of the crime"].)

Here, substantial evidence shows that Robles, Ibarra, and Miranda were known members of the State Street gang when they committed the crimes. Jones, the gang expert, testified that Robles and Miranda were known gang members and that Ibarra was a known gang member or an associate of the State Street gang. This evidence, together with the evidence discussed above showing that defendants intended to pursue and kill the officers and gave aid and encouragement to the shooter, shows that defendants intentionally committed the attempted murders together with known gang members. The evidence therefore supports the finding that defendants acted with the specific intent to facilitate criminal conduct by gang members within the meaning of section 186.22, subdivision (b)(1).

4.      *Defendants Have Shown No Instructional Error*

        a.      *Duty to Instruct on Defenses and Lesser Included Offenses*

The trial court must instruct the jury on any defense that is supported by substantial evidence and is not inconsistent with the defendant's theory of the case. (*People v. Mentch* (2008) 45 Cal.4th 274, 288.) In deciding whether to instruct on a defense, the trial court does not determine the credibility of the evidence. Instead, the court only determines whether there is evidence that, if believed by the jury, is sufficient

14

to raise a reasonable doubt concerning the defendant's guilt. (*Ibid.*) Our review on appeal is de novo. (*People v. Oropeza* (2007) 151 Cal.App.4th 73, 78.)

The trial court has a similar duty to instruct on any lesser offense necessarily included within the crime charged if there is substantial evidence that the defendant committed the lesser but not the greater offense. (*People v. Smith* (2013) 57 Cal.4th 232, 239-240.) The obligation to instruct on a lesser included offense arises sua sponte even if the defendant objects to the instruction for tactical reasons. (*People v. Banks* (2014) 59 Cal.4th 1113, 1160.) In deciding whether to instruct on a lesser included defense, the trial court does not determine the credibility of the evidence, but only determines whether there is substantial evidence that the defendant committed only the lesser offense. (*Id.* at pp. 1160-1161.) Again, our review on appeal is de novo. (*Id.* at p. 1160.)

### b. *Self-Defense*

A defendant acts in self-defense when he or she reasonably believes that killing is necessary to avert an imminent threat of death or great bodily injury. Self-defense is a complete defense to the crime of murder or attempted murder. (*People v. Elmore* (2014) 59 Cal.4th 121, 133-135.) The defense of self-defense is not available to a defendant who provokes an altercation unless the defendant makes a good faith attempt to withdraw from the altercation and communicates such intent to the victim. (*People v. Hernandez* (2003) 111 Cal.App.4th 582, 588-589; *People v. Watie* (2002) 100 Cal.App.4th 866, 877.) Imperfect self-defense is the killing of another human being under the actual but unreasonable belief that the killer was in imminent danger of death or great bodily injury. (*People v. Booker* (2011) 51 Cal.4th 141, 182.)

Here, there is no evidence that defendants feared any imminent threat of death or great bodily injury. Robles shouted and gesticulated at the officers, and defendants pursued the officers first on foot and then in a vehicle. The defendants were the aggressors. The officers fled as defendants pursued them. There is no evidence that the officers by their appearance or their actions threatened violence in any manner. The fact that Wences fired three times while only one shot was fired from the silver car does

15

not suggest that defendants acted in self-defense because there is no evidence that Wences was the first to point a gun at the other car.

Moreover, the evidence shows that defendants provoked the altercation, and there is no evidence that they attempted to withdraw from the altercation or communicated such an intent to the officers. Contrary to defendants' argument, the fact that they did not follow the Camaro through the red light at Cesar Chavez Avenue but instead turned right and quickly turned back onto State Street does not suggest that they abandoned the pursuit. We conclude that the defendants were not entitled to an instruction on self-defense or imperfect self-defense.

c. *Attempted Voluntary Manslaughter*

An intentional homicide is voluntary manslaughter if the defendant kills in the heat of passion in circumstances sufficient to provoke an ordinarily reasonable person to act rashly and without deliberation (heat of passion). (*People v. Elmore*, *supra*, 59 Cal.4th at pp. 133-134; *People v. Enraca* (2012) 53 Cal.4th 735, 739.) A defendant who provokes an altercation that results in a homicide cannot reduce the crime to voluntary manslaughter unless he makes a good faith attempt to withdraw from the altercation and communicates such intent to the victim. (*People v. Oropeza*, *supra*, 151 Cal.App.4th at p. 93; see *People v. Hill* (2005) 131 Cal.App.4th 1089, 1102-1103, disapproved on another ground in *People v. French* (2008) 43 Cal.4th 36, 48, fn. 5.)

Again, there is no evidence that defendants believed, reasonably or unreasonably, that they faced an imminent threat of death or great bodily injury. The officers' actions did not convey a threat of violence, and there is no evidence that Wences was the first to point a gun at the other car. Moreover, defendants provoked the altercation by chasing the officers, and there is no evidence that they attempted to withdraw. We therefore conclude that defendants were not entitled to a voluntary manslaughter instruction.

5. *The Trial Court Properly Excluded Robles's Statement*

Officer Bueno testified out of the presence of the jury that after he took Robles into custody and conducted a pat-down search, as he was placing him in a patrol car, Robles stated words to the effect, "They were shooting at us. I just wanted to get

16

away." Bueno stated that Robles's demeanor was quiet as he said this, but he was "sweaty" and "his breathing was a little up." Only a minute or two elapsed from the time Robles was searched until the time he made the statement. Robles sought to introduce the statement as a spontaneous statement under Evidence Code section 1240. The trial court concluded that Robles did not make the statement spontaneously and without an opportunity for reflection and deliberate fabrication, and therefore excluded the statement.

Evidence of an out-of-court statement offered to prove the truth of the matter stated is hearsay. (Evid. Code, § 1200, subd. (a).) Such evidence is inadmissible unless an exception to the hearsay rule applies. (*Id.*, subd. (b).) Evidence Code section 1240 establishes an exception for spontaneous statements: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."

"To apply the exception the trial court must determine that ' "(1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it." ' [Citation.] . . . [T]he mental state of the declarant—that is, the question of whether he or she was sufficiently under stress so as to dramatically reduce the possibility of deliberation and prevarication—is crucial to determining whether the exception applies." (*People v. Lucas* (2014) 60 Cal.4th 153, 269-270 (*Lucas*).)

The trial court did not abuse its discretion in excluding Robles's statement. As described by Bueno, although Robles was still physically excited, he was otherwise calm at the time he made the statement. Further, Robles made the statement after he was handcuffed, transported to the patrol car, and patted down for weapons. In making

17

its ruling, the court properly considered the level of stress or excitement apparent in Robles's voice and through his demeanor.  (*Lucas*, *supra*, 60 Cal.4th at p. 270.)

      6.      *The Trial Court Properly Excluded Evidence of Wences's Prior Discipline*

Defendants contend that the trial court erred in not allowing defense counsel to cross-examine Wences concerning his having inappropriately discharged a weapon on a prior occasion.  At trial, and outside the presence of the jury, defense counsel explained that Wences was disciplined for inappropriately discharging his weapon at the ground as a warning during a dispute with his neighbor in 2005.  Defense counsel stated that the prior discipline indicated that Wences knew the potential consequences of inappropriately discharging a weapon and had reason to fabricate the facts here.  Thus, defense counsel argued that evidence of the prior incident was admissible to impeach Wences's credibility based on bias.

The trial court stated that evidence of the prior incident was not impeachment evidence and that it was inadmissible under Evidence Code section 1101, subdivision (b) as evidence of prior bad acts.  The court stated, "My ruling is that this is inadmissible evidence under 1101, subdivision (b).  It is a completely different set of facts.  It is a completely different circumstance."  The court stated further, "If we weigh the probative value versus the prejudicial effect, there is no probative value.  It will simply detract the jurors from the issue in our case.  Opens up an entire other set of facts . . . . "

A trial court may exclude evidence if its probative value is substantially outweighed by the probability that its admission would necessitate undue consumption of time or create a substantial danger of undue prejudice or of confusing the issues or misleading the jury.  (Evid. Code, § 352.)  This is true even if the evidence is otherwise admissible.  (*People v. Cowan* (2010) 50 Cal.4th 401, 475.)  We review the trial court's exclusion of evidence under Evidence Code section 352 for abuse of discretion. (*People v. Williams* (2013) 58 Cal.4th 197, 267.)

The trial court did not abuse its discretion.  The prior incident involved off-duty conduct in 2005, and there is no evidence that Wences denied firing his weapon on that

18

occasion. The court reasonably concluded that the prior incident was dissimilar and that the danger of undue consumption of time and confusing the issues substantially outweighed any probative value. The court properly excluded the evidence under Evidence Code section 352.[7] Because we conclude that the trial court properly excluded the evidence under Evidence Code section 352, we need not decide whether the evidence was otherwise admissible.

7. *The Trial Court Properly Withheld Additional Police Personnel Records*

Defendants request that this court conduct an independent review of the sealed record of the in-camera *Pitchess* hearing in order to determine whether any police personnel records were improperly withheld. The Attorney General does not oppose the requested review.

Appellate courts routinely review sealed records withheld from disclosure after an in camera inspection by the trial court to determine whether the records were material and should have been disclosed. (*People v. Prince* (2007) 40 Cal.4th 1179, 1285.) Evidence is material for these purposes only if there is a reasonable probability that its disclosure to the defense would have produced a different result. (*People v. Martinez* (2009) 47 Cal.4th 399, 453; *City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 7-8.) We also consider the effect of the nondisclosure on defense counsel's investigations and trial strategy. (*Martinez, supra*, at p. 454.)

We have independently reviewed the sealed transcripts of the in camera proceedings in which the trial court adequately described the contents of the records and its reasons for not requiring disclosure of those records. We conclude that the undisclosed information in those records was not material to the defense. We therefore conclude that the court properly refused to disclose the records.

---

**7** In light of our conclusion that the trial court committed no instructional error and committed no error in the exclusion of evidence, defendants have shown no cumulative prejudicial error.

19

8.      *The Trial Court Properly Sentenced Defendants Under Section 186.22,*
        *Subdivision (b)(5)*

The trial court sentenced each defendant to two life terms with the possibility of parole after 15 years for the attempted premeditated murders pursuant to section 186.22, subdivision (b)(5), and doubled Robles's sentences pursuant to the three strikes law. Section 186.22, subdivision (b)(5) states that, with certain exceptions that are inapplicable here, "any person who violates this subdivision in the commission of a felony punishable by imprisonment in the state prison for life shall not be paroled until a minimum of 15 calendar years have been served."

Attempted murder is punishable by life imprisonment with the possibility of parole if the attempt was willful, deliberate, and premeditated. (§ 664, subd. (a).) A prisoner sentenced to life imprisonment ordinarily must serve a minimum term of seven years before being paroled. (§ 3046, subd. (a).) Section 186.22, subdivision (b)(5) is an alternate penalty provision that increases the minimum parole eligibility term from seven to 15 years. (*People v. Montes* (2003) 31 Cal.4th 350, 353, fn. 3.)

Defendants' challenge to the 15-year minimum parole eligibility terms concerns the interplay between sections 186.22 and 12022.53. Section 12022.53 imposes enhancements, additional prison terms, for persons convicted of certain felonies who personally used a firearm (*id.*, subd. (b)), personally and intentionally discharged a firearm (*id.*, subd. (c)), or personally and intentionally discharged a firearm proximately causing great bodily injury or death (*id.*, subd. (d)). (*People v. Brookfield* (2009) 47 Cal.4th 583, 589 (*Brookfield*).) Those additional terms must be in addition and consecutive to the term imposed for the underlying crime. (§ 10222.53, subds. (b), (c), (d).) Section 12022.53, subdivision (e)(1) extends those enhancements beyond persons who personally committed the stated acts to any defendant who was a principal in the commission of the offense if the prosecution pleads and proves that (i) the defendant committed the offense to benefit a criminal street gang within the meaning of section 186.22 subdivision (b)(1) and (ii) a principal in the offense

20

personally used a firearm or personally and intentionally discharged a firearm. (*Brookfield*, *supra*, 47 Cal.4th at p. 590.)

Thus, a defendant who personally used a firearm or personally and intentionally discharged a firearm in committing an offense to benefit a criminal street gang within the meaning of section 186.22, subdivision (b)(1) is subject to both an enhancement under section 12022.53 and increased punishment under section 186.22. (*Brookfield*, *supra*, 47 Cal.4th at p. 590.) But a defendant who did not personally use a firearm or personally and intentionally discharge a firearm in committing the offense and who is subject to an enhancement under section 12022.53 based on the acts of another principal pursuant to subdivision (e)(1) is not subject to increased punishment under section 186.22. (§ 12022.53, subd. (e)(2);[8] *Brookfield*, *supra*, at p. 590; *People v. Gonzalez* (2010) 180 Cal.App.4th 1420, 1425 (*Gonzalez*).)

Defendants contend the trial court erred by imposing 15-year rather than seven-year parole eligibility terms. They cite *People v. Salas* (2001) 89 Cal.App.4th 1275 (*Salas*) for the proposition that section 12022.53, subdivision (e)(2) exempts from increased punishment under section 186.22 any defendant who did not personally use a firearm. We disagree.

Section 12022.53, subdivision (e)(2) prevents a trial court from imposing punishment under both sections 12022.53 and 186.22 unless the defendant personally used a firearm in the commission of the offense, as we have stated. (*Brookfield*, *supra*, 47 Cal.4th at pp. 594-596; *Gonzalez*, *supra*, 180 Cal.App.4th at p. 1425.) If the defendant did not personally use a firearm and is subject to an enhancement under

---

[8] Section 12022.53, subdivision (e)(2) states: "An enhancement for participation in a criminal street gang pursuant to Chapter 11 (commencing with Section 186.20) of Title 7 of Part I shall not be imposed on a person in addition to an enhancement imposed pursuant to this subdivision, unless the person personally used or personally discharged a firearm in the commission of the offense."

Although courts distinguish an "enhancement" from an "alternative penalty provision," the term "enhancement" as used in section 12022.53, subdivision (e)(2) includes the alternative penalty provisions in section 186.22. (*Brookfield*, *supra*, 47 Cal.4th at p. 593.)

21

section 12022.53 based on the acts of another principal, the court must select between the punishments provided under sections 12022.53 and 186.22 and must impose the greater penalty.[9] (§ 12022.53, subd. (j); *Brookfield*, *supra*, at p. 596.) If the defendant is not subject to an enhancement under section 12022.53, that section is inapplicable and subdivision (e)(2) of section 12022.53 does not prevent the court from sentencing the defendant pursuant to section 186.22.

*Salas*, *supra*, 89 Cal.App.4th 1275, is not on point. The trial court in *Salas* sentenced the defendant to a life term with the possibility of parole after 15 years pursuant to section 186.22, subdivision (b)(5) and to a consecutive term of 25 years pursuant to section 12022.53, subdivisions (d) and (e)(1). There was no finding that the defendant personally used a firearm. *Salas* held that section 12022.53, subdivision (e)(2) prevented the trial court from imposing punishment under section 186.22, subdivision (b)(5) in addition to punishment under section 12022.53, subdivisions (d) and (e)(1) because there was no finding that the defendant personally used a firearm. (*Salas*, *supra*, at pp. 1281-1282.)

The jury here found as to Ibarra that the allegation that a principal personally used a firearm in committing the attempted murders was not true, and the trial court did not sentence Ibarra to an enhancement under section 12022.53 . Section 12022.53, subdivision (e)(2) therefore is inapplicable and did not prevent the trial court from sentencing Ibarra under section 186.22, subdivision (b)(5).

The jury found as to Robles that the allegation that a principal personally used a firearm in committing the premeditated attempted murders was true. He therefore was eligible for punishment under section 12022.53, subdivisions (b) and (e)(1). Robles was also eligible for punishment under section 186.22, subdivision (b)(5). But he could not be subjected to both punishments without a finding that he personally used a firearm. (§ 12022.53, subd. (e)(2).) The trial court was required to impose and execute the

---

[9] The trial court in those circumstances should impose and stay the lesser punishment. (*People v. Valenzuela* (2011) 199 Cal.App.4th 1214, 1238; *People v. Sinclair* (2008) 166 Cal.App.4th 848, 854.)

greater penalty. (*Id.*, subd. (j); *Brookfield*, *supra*, 47 Cal.4th at p. 596.) A term of (i) life with a minimum parole eligibility term of 15 years (§ 186.22, subd. (b)(5)), doubled to life with a minimum parole eligibility term of 30 years pursuant to the three strikes law, results in a greater penalty than (ii) life with a minimum parole eligibility term of 7 years (§§ 664, subd. (a), 3046, subd. (a)), doubled to life with a minimum parole eligibility term of 14 years, plus a 10-year enhancement (§ 12022.53, subds. (b), (e)(1)).[10] We therefore conclude that the trial court properly sentenced Robles under section 186.22, subdivision (b)(5) on the two premeditated attempted murder counts.

> 9.   *Ibarra's Aggregate Sentence Does Not Constitute Cruel and Unusual Punishment*

Ibarra contends his aggregate sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and article I, section 17 of the California Constitution. Ibarra forfeited this claim by failing to assert it in the trial court. (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1247-1248; *People v. Norman* (2003) 109 Cal.App.4th 221, 229.)

In any event, we conclude that Ibarra has shown no constitutional error. A punishment is cruel and unusual under the Eighth Amendment and article I, section 17 of the California Constitution only if it is grossly disproportionate to the defendant's individual culpability. (*People v. Boyce* (2014) 59 Cal.4th 672, 718-719.) Here, Robles shouted and gestured at the passing Camaro. Ibarra and Robles then followed the car on foot. Robles was visibly carrying a gun as Ibarra and Robles entered the silver car and continued the pursuit that led to the shooting. The jury found that Ibarra intended to kill the two officers by giving aid and encouragement toward that end, and substantial evidence supports those findings, as stated *ante*. Ibarra was 30 years old at the time of the crimes. There is no evidence that Ibarra suffered from

---

[10]   An enhancement under section 12022.53 is not doubled under the three strikes law. (*People v. Sok* (2010) 181 Cal.App.4th 88, 93-94; *People v. Dominguez* (1995) 38 Cal.App.4th 410, 424.)

a diminished mental capacity or failed to appreciate the criminality of his conduct. We conclude that Ibarra's aggregate sentence of life with the possibility of parole after 30 years does not shock the conscience, is not grossly disproportionate to his individual culpability, and therefore does not constitute cruel and unusual punishment.

10. *The Minute Order on the Verdict Must Be Corrected*

A minute order of the hearing on March 7, 2013, incorrectly states that the jury found "true" the allegations against Ibarra that a principal personally used a firearm within the meaning of section 12022.53, subdivision (b) in the commission of the attempted murders. The verdict states that the jury found those allegations "not true" as to Ibarra.

An appellate court has the authority to correct clerical errors in a minute order so as to ensure that the record is accurate. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385-386.) Accordingly, we will direct the trial court to prepare amended minutes of the March 7, 2013, hearing stating that the jury found "not true" the allegations against Ibarra that a principal personally used a firearm in the commission of the attempted murders.[11]

---

[11] This opinion does not address errors that may exist in the abstract of judgment because those issues were not raised by this court or the parties. For example, although the trial court sentenced Robles to a consecutive three-year term under section 667.5(a), the abstract of judgment states that this term is stayed.

### DISPOSITION

The judgments are affirmed. The matter is remanded with directions to correct errors in the March 7, 2013 minute order to reflect that the jury found "not true" the allegations against Ibarra that a principal personally used a firearm in the commission of the attempted murders.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

LAVIN, J.*

WE CONCUR:

KITCHING, Acting P. J.

ALDRICH, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.